v. Nancy Whaley. Good morning, your honors. Nancy Whaley. I'm a Standing Chapter 13 trustee in the Northern District of Georgia. The Bankruptcy Code strives to bring a balance between the consumer debtor with financial relief and a fresh start while ensuring creditors receive payments that are equitable and a debtor's ability to pay. In 2018, over 290,000 Chapter 13 cases were filed in the United States. Of those, 57,770 were filed in the 11th Circuit, which far exceeds any other circuit. Each one of those cases had one or two debtors, a trustee, and creditors, all of which are dependent upon the orders of the court being reliable and enforceable. The issues before the Court today go to the very heart and fundamental principles, and this Court's ruling will impact every Chapter 13 debtor, every bankruptcy judge, every trustee, and every creditors, and determine whether all parties can depend upon the orders of confirmation of a debtor's plan as a binding contract and one that can be relied upon without continual litigation. This reliance is essential if we want our system to continue to be fair, equitable, efficient, and cost-efficient to everyone involved. If the Bankruptcy Court's ruling in this case is allowed to stand, it means that there are thousands of Chapter 13 cases with plans that are not binding. The ruling by this Court will be determinative if this debtor, or now her personal representative, will be required to pay her unsecured creditors as much as they would have received in a Chapter 7 instead of a Chapter 13 had she filed a 7. This basic requirement of the Code is one that must be met by all debtors in order to retain property, modify claims, and be allowed to pay creditors over time rather than have their assets liquidated immediately and for creditors to receive an immediate payment. You said if we affirm the Bankruptcy Court's order, then no one can rely upon these plans as being final. But they are, in fact, final unless modified by the Court, correct? Well, Your Honor, in the Bankruptcy Court's opinion, one of the issues that the Court said of why the term of liquidation was not binding was because the Court did not hear the matter and because evidence was not found specifically on that term of the plan. So, as I pointed out in my brief and today, the thousands of cases are filed in a Bankruptcy Court. The way that the system would work is the judges do not hear those cases. If the parties, typically it's the trustee and many times creditors, but if the issues are resolved by consent of the parties, the trustee at the call of a calendar would recommend confirmation of the plan as what happened in this case and an order of confirmation is entered and there is no evidence taken on those matters. And what the Bankruptcy Court judge said in this case is I didn't hear evidence on the matter of liquidation and because I didn't hear evidence on the matter of liquidation, it is not final and it is not binding. That opens up all the terms of a Chapter 13 plan to be open for continual litigation. And as this Court has found in the 11th Circuit and the Supreme Court, we now have a strong history of finality of an order of confirmation, the binding effect, and the necessity of that, so there is not continual litigation. What the judge found was initially, just by confirming the plan, was that in part that it was in the best interest of the creditors. But he didn't find it was the only plan and the only plan of distribution that could be in the best interest of the creditors, just that this one fit in that category. And when he modified, he said, still in the best interest of the creditors, it's just got a different structure. Your Honor, that's correct. The problem with that is, is it undoes the binding effect and what creditors, debtors, and unsecured trustees, debtors, and creditors can rely on, then when is the term binding? If in this particular case, the amount that was determined to be paid to meet the best interest of creditors test was initially proposed by the debtor in their initial plan, the trustee objected to that term of the plan, stating that it did not meet the best interest of creditors test. The objection to confirmation was initially withdrawn, and so that term was a term that there was a meeting of the minds, and there was an agreement, and it was deemed, made it to be binding once the order of confirmation was entered. So in the example, if that is not the case, there are many ways that valuation can happen in a Chapter 13 case. There are many ways that liquidation can be determined, because to meet the best interest of creditors test, we do not have an actual sale of property. All we have is a hypothetical liquidation. How you meet that hypothetical liquidation can happen in numerous ways. The court used one analysis post-confirmation, both the debtor and the trustee used the exact same analysis pre-confirmation. The statute does not require that the judge ascertain the, what the plan that is in the best interest of the creditors, just that the plan be in the best interest of the creditors, right? So it's, and this is the whole problem, is should we add a gloss to the statute, and require a change, a substantial change in circumstances for a debtor to get a modification? Your Honor, I'd like to get back to your first point, though, that this is just one, or just one number that may meet the best interest of creditors test. 1325A4 requires that the best interest of creditors test is determined on the effective date of the plan, which is confirmation, which the Supreme Court has said in Lanning and in Bullard. So at the time of confirmation, the, if the agreement of what the hypothetical liquidation was at the time of confirmation can be undone later by the debtor, by the trustee. So for instance, in this case, property values increase. So as the trustee. You're not suggesting, are you, Ms. Whaley, that a Chapter 13 plan that would have res judicata effect can never be subsequently modified, are you? As long as it falls within the requirements of 1329. The answer is it can be modified.  Yes, Your Honor. Notwithstanding the fact that we say, and the statute says, it has res judicata effect. It has preclusive effect. However, 1329 recognizes that it may be subsequently modified by a bankruptcy court order, right? Yes, Your Honor. So the only issue here, if I have it right, is whether or not there is a need to show change in circumstances before that modification may occur. Do I have that right? Yes. I mean, that's the basic question. Let's go back to the facts. No, no, no. I want you to help me with my, the way I see it, and then you can tell me how I've misunderstood it. You accept that under res judicata principles, it has this effect, but it may be modified under some circumstances by a bankruptcy judge pursuant to 1329. Yes. That much everybody agrees on. Yes. It seems to me where the split here is, where the argument here is, is whether you can modify it without a showing of change in circumstances. And your position, like one of the circuits, is no, you have to show a change in circumstances. The other side's position is there's nothing in the language that Congress gave us in 1329 that required as a condition preceding to modification that there be change in circumstance. That's the issue. Yes. Correct? Yes. All right. Tell me what there is in 1329, looking at the language itself, that suggests that you need to show a change in circumstance. I don't find it in 1329 A1, A2, A3, or A4. And I certainly don't see it in A, in B. Where am I, why should I read it in when Congress didn't put it in there? Your Honor, I'm not asking this Court to read anything into 1329. At the same time, I'm asking this Court not to read anything out of 1327. And 1327 is the effect of confirmation, which does give the provisions of a confirmed plan, bind the debtor and each creditor, whether or not such creditor has objected or accepted or rejected the plan. Right. But the question here is how we read together. That's correct. 1327 and 1329. There is a recognition of the res judicata preclusive effect. And yet, Congress said, you still can modify under some circumstances. I want you to tell me why we should glom on to 1329, the additional requirement that you need to show a change in circumstance. One circuit has said you should, three others have said we ought not to. At least I have the split right, right? That's correct. So why ought we to adopt the view that we're reading the requirement to show change of circumstances into 1329? One, this Court and Ray Hoggle, in which a debtor attempted a post-confirmation modification, referred to the legislative history of 1329. In 1329, even the case of the First Circuit of Barbosa and the bankruptcy court looks to the legislative history of 1329, which clearly says— I would only look to the history if I couldn't find an answer in the text. But I think that the legislative— You would agree with that. I would agree with that. I do think that the legislative history, though, helps the Court to reconcile 1327 with 1329 because without 1329, a debtor would never be able to modify a plan. A debtor is in a Chapter 13 case for 36 to 60 months. That is a long time to bind someone to a plan if there is a change of circumstance. Life happens with a debtor. There has to be an ability for a debtor to modify and change when there is a purpose. I want to come back, though, to this particular case because there is not a post-confirmation change or anything that would warrant. Just as this Court found in Hope v. Acorn, in that case, the trustee attempted to modify, or I'm sorry, change the status of a claim and void a claim post-confirmation. What the Court—what this Court found was that the trustee was precluded by Reyes-Judicata to avoid the lien because she knew of the claim defect prior to confirmation and prior to the order being entered, so she could have raised it at the time of confirmation. In this particular case, the modification is based upon the debtor's—the debtor lowering the amount to be paid to the unsecured creditors in order to pay attorney fees. Those attorney fees were earned after the filing of the case and prior to confirmation. That is an issue that could have been raised at the time of confirmation. And as this Court has found in Enright-Bateman, Reyes-Judicata and claim preclusion relates not only to every matter that was actually offered and received to sustain the demand, but also of every claim that could have and might have been presented. Going back to then this Court's question about a change of circumstance under 1329, yes, a change of—it's hard for me to—and I see that I'm out of time—it's hard to envision a case where there's not a change of—whether it's a factor or whether it is a prerequisite to broad of what a debtor can modify post-confirmation. If there's not some limitation to that by showing a change of circumstance or a difference, then it opens up every provision of a plan to be re-litigated over and over and over. But you are asking us—you're saying it's a broad statute, but it is very clear in its terms, and you are asking us as a Court to provide a limitation that Congress has not provided. What I'm asking this Court to do is stay with its progeny of—or its ruling in Hoggle and all the progenies— Well, Hoggle doesn't really answer this question, would that it did, but it doesn't quite get us there, does it? I believe it's on point. I believe that it was a case in which a debtor— You think it's on all fours? We could cite Hoggle, walk away, case closed? Well, I think that this case— We could reverse the bankruptcy court simply citing Hoggle because Hoggle clearly controls the answer? I think Hoggle is— Was that a yes or a no? I don't mean to be pressing you, but— No, yes. But one of the things I want to point out, though, is Hoggle had a post-confirmation change in circumstance. This case does not have a post-confirmation change in circumstance. There's nothing that happened post-confirmation except something that was known pre-confirmation that could have been litigated at that time. I would also like to just say to the Court that even if you look to 1329— You can take—you can do that, but at this point we're going to have to hold you to the time limit and you'll lead into your rebuttal if you want to. I will wait. Okay, thank you. Thank you, Your Honor. May it please the Court, my name is Howard Rothblum. I represent the late Rachel Gillen. Ms. Gillen, the debtor in this case, died about a year and a half ago. Her husband has been administratively substituted as the representative in her bankruptcy case by the bankruptcy judge, Judge Sacka. In this appeal, Ms. Gillen argues that the Bankruptcy Code, Section 1329, governing modification of a plan after confirmation, does not require a showing of changed financial circumstances as a threshold requirement for modification. Post-confirmation allowance of the attorney's fees claim, in this case, a priority claim that must be paid in full under Ms. Gillen's plan, caused the payments under the plan to extend beyond the Section 1322d five-year maximum. And can I just ask you a factual question? Yes. At the time of confirmation, wasn't it known to all sides that the issue of the amount of the attorney's fees in the adversary proceeding was outstanding and would still have to be resolved? It didn't come up. I knew it. It was on the schedules, actually, I believe. I knew that I would have to file an application for attorney's fees. But this case had been reset five or six times. And what happened was that once the adversary proceeding was resolved, then all the roadblocks to confirmation, which was scheduled four or five days later, were removed. But isn't this sort of a routine matter in bankruptcy? Once an adversary proceeding is resolved in favor of the debtor, the attorney representing the debtor seeks fees from the bankruptcy court. That does happen. I'm not sure I would say, of course, it happens. Yes, it could happen. It doesn't happen a lot. Let me put it this way. All of this was fully, you could fully anticipate all of this on the front end, right? You didn't have to wait afterwards to come back and seek a modification under 1329, did you? I didn't fully anticipate it or else we wouldn't have. That there would be a fee, whether it was eight grand or four grand or whatever, that there would be a fee that would have to be built into the calculus? I would say yes, that we knew, that I knew that I would need to be paid for unsecured creditors. And I was also aware that there would be sufficient funds to do a modification, which would have had to been done pre-petition otherwise, in order to allow payment of the priority claim. But I want to emphasize this. At the point at which the court, post-confirmation, allowed the attorney's fees claim of $8,295, at that point, the case, the term of the plan... Well, I just want to go back to your colleague's cites to the legislative history, which we referenced. And we said, among other things in Holo, Congress designed 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation. Pressing unforeseen. Was there anything unforeseen here? The only thing that would be unforeseen... Well, what was unforeseen was whether... There was nothing unforeseen to me. I knew that the application had to be filed, and the attorney's fees had to be awarded. Whether or not the application would be granted, and in what amount was unforeseen to me. That's it. But I have... Your fee issue could have been addressed before confirmation, correct? Not... It could have been if the hearing date had been... The confirmation hearing date had been postponed. But there was only a four-day period between the... Approximately four-day period between the date of the entry of the judgment resolving the adversary proceeding. And the confirmation hearing. So when you're... Who controlled that date? I did... I'm sorry? Who controlled that date? The date of the confirmation hearing? The court controlled the date of the confirmation. But the way typically our practice works is that debtor's counsel will ask the staff attorney for the Chapter 13 trustee if there is an agreement that the hearing can be reset. And if there is no agreement, then counsel has to keep coming down to the bankruptcy court at the confirmation hearing date and asking the... And to ask the court to reset the confirmation hearing. So each reset was very short. And there's actually a lot of pressure on debtor's counsel to get this case confirmed. And that is illustrated by the fact that there were multiple, multiple resets of the confirmation hearing. Because each reset is very short. There's a lot of pressure to get this case confirmed. There's money being held... Why should we not follow the view of the Fourth Circuit? The Fourth Circuit has said that a bankruptcy court first must determine if there is a substantial and unanticipated change in post-confirmation financial condition. And the reason for that is to ensure that confirmation orders will be accorded the necessary degree of finality and preventing parties thereby from seeking to modify the plans when minor and anticipated changes in the debtor's financial condition take place. It's admittedly not in the text of 1329. That's an easy answer to what I'm asking. But I'm asking the question nevertheless. Judge Marcus, I'll answer that very simply with a rhetorical question. Why? I prefer an answer that helps me. I'm about to go into that. Because the debtor's financial circumstances have absolutely nothing to do with the purpose of the modification. Period. They're irrelevant. So to impose some arbitrary standard is totally absurd, as I say in my brief. You might as well impose a requirement that the debtor had to be born on a Tuesday. That has nothing to do with changing the way the pool of funds to unsecured creditors are going to be distributed. Nothing. Nothing whatsoever. If the debtor's income had gone up, what difference would it make? If it had gone down, what difference does it make? We weren't proposing to change the amount of the payment into the plan. We weren't proposing to change the total amount to be paid into the plan. We were simply proposing to do something that we could have done pre-petition and that is alter the way that the funds would be distributed to a class. The serious problem that would occur here, if the court were to rule in the trustee's favor, is the debtors could automatically, automatically dismiss their Chapter 13 if they can't do a post-confirmation modification and refile and propose the same terms that the debtor was seeking to modify to begin with. And whose benefit is that for? It's a burden on the court, on the debtor, on the debtor's counsel, and even the trustee. So we can accomplish the very same thing if the court were to rule in favor of the trustee by dismissing the case and refiling it. And there's nothing to stop it. You understand that if we rule in your favor, the statute is not limited to the ability of the debtor to seek modification. This would also apply upon the request of the debtor, the trustee, or the holder of an allowed unsecured claim. They also could seek modification for any reason under the statute. Would you agree? I would agree and I don't, I haven't had a problem with that. Of course, any holding we could issue would be limited to the debtor. We could speculate, we could give you a dicta about someone other than the debtor, but it would have no binding precedential effect. It would simply be dicta, right? I think so, yes. Once that attorney's fees order was entered, Ms. Gillen was faced with two options to avoid dismissal. Dismissal because the case would then extend beyond five years. And the two options both included modification, period. They both included modification. One would be to modify to increase the plan payment. And based on the trustee's argument, that modification wouldn't be allowed. In this case, the debtor's on a fixed income. Her income was solely Social Security and her husband's income was Social Security and a small pension. So based on the trustee's argument, there would be no ability whatsoever to pursue that first option of amending to increase the plan payment so that the case would pay out in the five years. And the second option was the option that we chose because the debtor didn't have a substantial, unanticipated change in her financial circumstances. Unless, of course, you would say that the allowance of the attorney's fees themselves was a substantial, unanticipated change in the debtor's financial circumstance. So we chose the second of the two options that required modification. But basically, the Chapter 13 trustee is arguing in this case and in any case where something happens post-petition that requires change in distribution of funds to a specific class, the case must be dismissed. That is what the trustee is arguing in this case. Ms. Gillen's case had to be dismissed once the attorney's fees were allowed. There is no issue as to whether or not the attorney's fees should have been allowed. The attorney's fees were allowed. Once they were allowed, the trustee's position is there was no option unless the debtor could show this absurd requirement that she had a substantial, unanticipated change in her financial circumstances. And I will emphasize that the bankruptcy court did state that the award of the attorney's fees was a substantial change in circumstances of the debtor. So I think that I really would argue that... Well, I will address Judge Branch's question. The amicus brief that was filed by the National Association of Consumer Bankruptcy Attorneys took the position that actually the trustee must or non-debtor parties must show that there's a substantial unanticipated change. But that's not the question before us today. Yes, Your Honor, you're correct. Yes. With regard to the issue of race judicata, the bankruptcy court does state that there was, in fact, no finding. And as Judge Ungaro has mentioned, that the court simply found that the requirements of the best interest of the best creditors was met and not specifically what that number was. It's not unusual for debtors to file bankruptcy cases where they propose a pool to unsecured creditors that is substantially larger than the amount necessary to satisfy the best interest of the creditor's test. I have clients that come in all the time and they say, I really feel bad that I didn't pay back my debt and I want to pay everybody every penny. No one should make the mistake of assuming that the pool to unsecured creditors is the amount, the amount, the specific amount necessary to satisfy the best interest of the creditor's test. There are no further questions. I ask that the court affirm Judge Sacka's opinion in the bankruptcy court. Your Honors, I would like to point out a few in response to counsel's comments. First, the unsecured credit, attorney fees being paid in a Chapter 13 cannot be paid at the detriment of the unsecured creditors that are entitled to be paid as much as they would have been paid in a Chapter 7. That's an elementary requirement of Chapter 13 that under 1325A, which is required to be met under any modification under 1329. 1329 says that a modification has to be approved within the parameters of 1325A. 1325A4 is the liquidation test. In this particular case, Mr. Rothblum's fees would not have been paid in a Chapter 7. They would not have been paid out of the liquidation funds available for the unsecured creditors. So in this particular case, not only do we not have a change of circumstance, we also have a provision that's not modifiable to lower just because attorney fees have been incurred. The 1320, a modification could have happened in this case in several ways. Or in general, let's say. Debtors could have increased their plan payment. Debtors could have extended their time. An outside party could have paid attorney fees. Attorney fees could have been waited till the end. The initial attorney fees in this case were higher than a customary Chapter 13, which we objected to the fees and withdrew that objection based upon some of the work that the debtor attorney would be doing in this case. But the debtor's attorney did not act as a Chapter 7 in this case. And within the liquidation analysis, we allowed $22,000 to cover administrative fees to cover the attorney fees and the cost of sale. I also want to- But at the time you withdrew your objection to the initial confirmation, you knew the fees had not been awarded for the adversary proceeding. Your Honor, what we knew was that the attorney fees in the case were $4,900. Many times those fees, and they were higher, could have accounted for in our district because we do not have a flat fee. They are a market rate. They come in, they can propose the fee that they choose. There was no reason for us to believe that there were additional fees in the adversary. Well, actually, I looked at the schedules. I guess I saw it in the schedules. I don't have the record in front of me, and I'm not a bankruptcy lawyer. My recollection from the schedules is the schedules made clear that the fee the $4,900 fee was the base fee and did not take into consideration fees from the adversary proceeding. Do you disagree with that? Yes and no. In this particular case, or in all cases, that language is standard language in our plan. The 2016B was actually amended post-confirmation to add an hourly rate. It did not have an hourly rate pre-confirmation. I would like to- I see that I'm short on time. I do would like to just point out the voluntary dismissal, if the debtor voluntarily dismisses this case, a debtor has a right to do that, of course, just like they can convert. There are ramifications to that. A voluntary dismissal in this case resurrects the lien that was avoided under 506D pursuant to 348. Property values have increased. The amount that the debtor may be required to pay in a new case could be even higher. It's not that the debtor can do anything they want because, oh, we can just voluntarily dismiss. In closing, I would just like to say, as this court and Hope v. Acorn, citing 2 Bankowski, said, if a plan is not finalist to all, it is not finalist to any. The finality and reliability and enforceability of the court's orders, it's essential to our bankruptcy system and the justice system. Our judicial system encourages parties to reach consensual agreements. The bankruptcy system is dependent upon the parties working together, especially in consumer cases where funds are finite. If the bankruptcy court order is allowed to stand, every case would need to be heard by a judge and for terms to be determined with hearing evidence so that parties know that they're final and binding. This would be extremely costly to debtors and to creditors. Trustees and creditors would even find themselves in having to object to confirmation to ensure that a term is binding and that there was a meeting of the minds and that the court found evidence as to that matter. I don't believe that's what's required by the code and I don't believe it serves a purpose. While there are exceptions to the binding effect, this case does not meet one of those exceptions. There are no change of circumstances and it's not a modifiable term. I'm asking this court to overrule the bankruptcy court and uphold this circuit's longstanding tradition on res judicata and claim preclusion and that there's a change of circumstances, a change of circumstance is needed or at least a factor and a prerequisite before a plan can be modified under 1329 and that this modification does not meet the requirements of 1325A and therefore it's not a modifiable term. Thank you very much and thank you both. It's an interesting case. This court is adjourned.